**Appeal No. 22-30179**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA
Plaintiff-Appellant,

V.

PAIGE THOMPSON
Defendant-Appellee

---

On Appeal from the United States District Court for the Western District of
Washington,
Case No. 2:19-cr-00159-RSL

---

**AMICUS CURIAE BRIEF
OF THE CENTER FOR CYBERSECURITY POLICY AND LAW**

---

Tyler G. Welti, CA Bar # 257993, tgwelti@venable.com
**VENABLE LLP**
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755
tgwelti@venable.com

Matthew D. Field, mfield@venable.com
Harley L. Geiger, hlgeiger@venable.com
**VENABLE LLP**

600 Massachusetts Ave. NW
Washington, DC, 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

*Attorneys for Amicus Curiae the Center for Cybersecurity Policy and Law*

## <u>TABLE OF CONTENTS</u>

Page(s)

**I.** **IDENTITY AND INTEREST OF AMICUS CURIAE** ............................ 1

**II.** **INTRODUCTION** ............................................................................ 2

**III.** **ARGUMENT** .................................................................................. 3

    A.    Conflating harmful criminal activities with good-faith security research would harm the security research community. ....................... 3

    B.    The Defendant's actions were not good-faith security research. .......... 6

    C.    The Court should consider clarifying that Defendant's actions were not good-faith security research and that the District Court did not rely on any such claims in sentencing. ...................................................... 11

**IV.** **CONCLUSION** ............................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Court Rules**

Fed. R. App. P. 29(a)(4)(E)......................................................1

**Other Authorities**

37 C.F.R. § 201.40(b)(16)......................................................5

Bugcrowd, Code of Conduct,
   https://www.bugcrowd.com/resources/essentials/code-of-conduct
   (last accessed Sep. 15, 2023) ...................................................9

HackerOne, Code of Conduct
   https://www.hackerone.com/policies/code-of-conduct (last
   accessed Sep. 15, 2023) ...........................................................8

Intigriti, Community Code of Conduct,
   https://kb.intigriti.com/en/articles/5247238-community-code-of-
   conduct (last accessed Sep. 15, 2023) ...................................9

Jack Gillum, *A Missouri Reporter Is Getting Blamed For the Security
   Flaw He Exposed*, Bloomberg, (Jan. 11, 2022),
   https://www.bloomberg.com/news/newsletters/2022-01-11/a-
   missouri-reporter-is-getting-blamed-for-the-security-flaw-he-
   exposed. ..................................................................................4

James Hendler, *It's Time to Reform the Computer Fraud and Abuse
   Act, Scientific American* (Aug. 16, 2013),
   https://www.scientificamerican.com/article/its-times-reform-
   computer-fraud-abuse-act ....................................................12

Kate Conger, *Fraud and Identity Theft Trial to Test American Anti-
   Hacking Law*, The New York Times, (Jun. 8, 2022),
   https://www.nytimes.com/2022/06/08/technology/capital-one-
   hacker-trial.html...............................................................2, 12

Letter from Evelyn Remaley, Acting Assistant Sec'y for Commc'ns & Info. & Adm'r, Nat'l Telecomms. & Info. Admin., U.S. Dep't of Commerce, to Shira Perlmutter, Register of Copyrights and Dir., U.S. Copyright Office, at 88 (Oct. 1, 2021), https://cdn.loc.gov/copyright/1201/2021/2021_NTIA_DMCA_Letter.pdf. ........................................................................................4

Letter from John T. Lynch, Jr., Chief, Computer Crime & Intellectual Property Section, Criminal Division, U.S. Department of Justice, to Regan A. Smith, General Counsel & Associate Register of Copyrights, U.S. Copyright Office (Jun. 28, 2018), https://www.copyright.gov/1201/2018/USCOletters/USDOJ_Letter_to_USCO.pdf. ................................................................................5

National Association of Criminal Defense Lawyers, Computer Fraud and Abuse Act, https://www.nacdl.org/Landing/ComputerFraudandAbuseAct (last accessed Sep. 15, 2023) .................................................................13

Organisation for Economic Co-operation and Development, Encouraging Vulnerability Treatment: Overview for Policy Makers (Feb. 11, 2021), https://www.oecd.org/digital/encouraging-vulnerability-treatment-0e2615ba-en.htm .........................................10

Riana Pfefferkorn, *The Importance of Protecting Good-faith security Research, Stanford Center for Internet and Society* (Sep. 14, 2020), https://cyberlaw.stanford.edu/blog/2020/09/importance-protecting-good-faith-security-research. ...........................................4

The Software Engineering Institute's Computer Emergency Readiness Team Coordination Center ("CERT/CC"), Vulnerability Disclosure Policy Templates for Reporters, https://github.com/CERTCC/vulnerability_disclosure_policy_templates/blob/main/Reporters.md#coordination-with-organization (last accessed Sep. 15, 2023) ...................................................................8

U.S. Cybersecurity and Infrastructure Security Agency, Binding Operational Directive 20-01: Develop and Publish a Vulnerability Disclosure Policy (Sep. 2, 2020), https://www.cisa.gov/news-events/directives/bod-20-01-develop-and-publish-vulnerability-disclosure-policy ...........................................................................6, 10

U.S. Department of Justice, *Department of Justice Announces New Policy for Charging Cases under the Computer Fraud and Abuse Act* (May 19, 2022), https://www.justice.gov/opa/pr/department-justice-announces-new-policy-charging-cases-under-computer-fraud-and-abuse-act. ...........................................................................5

U.S. Department of Justice, Justice Manual, 9-48.000.B.3 - Computer Fraud and Abuse Act (last updated May 2022), https://www.justice.gov/jm/jm-9-48000-computer-fraud ...................................7

U.S. Office of Mgmt. & Budget, OMB M-20-32, Improving Vulnerability Identification, Management, and Remediation (Sep. 2, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/09/M-20-32.pdf ...............................................................6

## I.     IDENTITY AND INTEREST OF AMICUS CURIAE

The Center for Cybersecurity Policy and Law (the "Center") is a nonprofit organization that develops, advances, and promotes best practices and educational opportunities among cybersecurity professionals. The Center has been a vocal and leading advocate in distinguishing good-faith security research from malicious hacking.

The Center has substantial interest in this proceeding because one of its significant organizational concerns is delimiting and preserving the distinction between good-faith security research and harmful criminal activity. Such a recognition is needed to prevent undermining trust between the security, business, and policy communities and ensure ethical research is not conflated with actions like those of the Defendant. The Center files this brief in support of the Plaintiff-Appellant's to inform the Court of the risks of conflating harmful criminal activity with good-faith security research and address how the sentence issued by the District Court risks conflating these concepts in public perception. It is not the Center's purpose to specify an appropriate sentence.

Pursuant to Fed. R. App. P. 29(a)(4)(E), the Center certifies that no party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting the brief. No person – other than the Center, its members, or its counsel – contributed resources to prepare

1

and submit this brief. Although the Center counts as current or former members businesses affected by the breaches involved in this case, including Capital One and Amazon, none have contributed money intended to fund preparing or submitting this brief, and the brief was paid from the Center's general operating funds.

## II.    INTRODUCTION

The Center respectfully submits this brief in support of the Plaintiff-Appellant's appeal to provide additional context regarding perceptions that the Defendant's actions were good-faith security research and that this view played a role in sentencing. Although the jury verdict below recognized that the Defendant was not engaged in good-faith security research, the District Court's sentencing decision risks blurring these lines. Specifically, the District Court's decision could create the impression that Defendant's activity was similar in kind to good-faith security research, particularly in light of the Defense's arguments at trial.[1] Accordingly, we submit this brief to clarify the difference between Defendant's conduct and good-faith security research. We respectfully ask this Court, in evaluating the government's claims, to consider the importance of this distinction

---

[1] *See, e.g.*, Def.'s Mtn. to Dismiss CFAA Counts, 10-11 (Dkt. 123) (arguing that Defendant used "the *very same*" techniques as a "white hat hacker" and that her prosecution is arbitrary (emphasis in original)); Trial Tr. vol. 7, 63-65, 96-97, Jun. 15, 2022; *see also* Kate Conger, *Fraud and Identity Theft Trial to Test American Anti-Hacking Law*, The New York Times, (Jun. 8, 2022), https://www.nytimes.com/2022/06/08/technology/capital-one-hacker-trial.html.

and the need to deter the former while promoting the latter. We encourage the Court to clarify that the Defendant's actions were not good-faith security research and that the District Court did not rely on any such claims at sentencing.

If the Defendant had performed good-faith security research, the Center would support her defense. The Defendant may have performed security research or ethical hacking at other times, and we hope the Defendant will have the opportunity to use her talents to perform good-faith security research in the future. However, we urge the Court to avoid public misperceptions that the Defendant's actions as presented at trial are good-faith security research. To do so would risk undermining progress that the security community has made in advancing legal protections for good-faith security research, as well as progress the security community has made in forming collaborative relationships with businesses and governments on this issue. This amicus brief provides information on the distinction between good-faith security research and malicious cyber activities and underscores the importance of maintaining this distinction within the legal framework.

## III.    ARGUMENT

### A.    Conflating harmful criminal activities with good-faith security research would harm the security research community.

The ethical hacking or security research community is harmed by failures to recognize the distinction between good-faith security research and malicious cybercrime. Perceptions that the Defendant's actions were good-faith security

3

research, when her actions indicate that she was not acting as a good-faith security researcher, creates risks to the progress of the security research community's efforts to strengthen legal protections and societal acceptance of independent good-faith security research.

Federal, state, and international computer security laws continue to imperil legitimate information security researchers, or ethical hackers.[2] Security researchers continue to be targets of legal threats, lawsuits, and law enforcement investigations for acts of good-faith security research.[3] Such threats to good-faith security researchers are frequently due to a misperception that they seek to cause harm rather than improve security.

The good-faith security research community is valuable to society.[4] By identifying vulnerabilities and disclosing them to system owners and operators to

---

[2] *See, e.g.,* Riana Pfefferkorn, *The Importance of Protecting Good-faith security Research, Stanford Center for Internet and Society* (Sep. 14, 2020), https://cyberlaw.stanford.edu/blog/2020/09/importance-protecting-good-faith-security-research.

[3] *See, e.g.*, Jack Gillum, *A Missouri Reporter Is Getting Blamed For the Security Flaw He Exposed*, Bloomberg, (Jan. 11, 2022), https://www.bloomberg.com/news/newsletters/2022-01-11/a-missouri-reporter-is-getting-blamed-for-the-security-flaw-he-exposed.

[4] Letter from Evelyn Remaley, Acting Assistant Sec'y for Commc'ns & Info. & Adm'r, Nat'l Telecomms. & Info. Admin., U.S. Dep't of Commerce, to Shira Perlmutter, Register of Copyrights and Dir., U.S. Copyright Office, at 88 (Oct. 1, 2021), https://cdn.loc.gov/copyright/1201/2021/2021_NTIA_DMCA_Letter.pdf ("Good-faith security research is critical to address threats of vital national, economic, and societal interest. […] The importance of such research continues to increase given the 'the ubiquity of software in modern life.'").

mitigate, the work of security researchers makes people more secure. For this reason, many public and private sector entities have supported the community's work, promoted vulnerability disclosure policies and bug bounty programs, and urged businesses to collaborate with rather than threaten researchers. Similarly, security community advocates have urged prosecutors and civil litigants to exercise restraint and avoid attempting to punish or silence good-faith security researchers.

The security research community has built trust and goodwill over time with businesses and governments. This movement has made important progress, resulting in improvements such as the Department of Justice's charging policy under the Computer Fraud and Abuse Act ("CFAA") to decline prosecution of good-faith security research.[5] The Librarian of Congress also established regulatory protection for good-faith security research under Section 1201 of the Digital Millennium Copyright Act,[6] with the support of the Justice Department.[7] Businesses and other entities are increasingly adopting vulnerability disclosure policies and bug bounties,

---

[5] U.S. Department of Justice, *Department of Justice Announces New Policy for Charging Cases under the Computer Fraud and Abuse Act* (May 19, 2022), https://www.justice.gov/opa/pr/department-justice-announces-new-policy-charging-cases-under-computer-fraud-and-abuse-act.

[6] 37 C.F.R. § 201.40(b)(16).

[7] Letter from John T. Lynch, Jr., Chief, Computer Crime & Intellectual Property Section, Criminal Division, U.S. Department of Justice, to Regan A. Smith, General Counsel & Associate Register of Copyrights, U.S. Copyright Office (Jun. 28, 2018), https://www.copyright.gov/1201/2018/USCOletters/USDOJ_Letter_to_USCO.pdf.

recognizing the value of good-faith security research to help keep them secure.[8] These developments are positive for the technology ecosystem, consumer and enterprise protection, and the security community itself.

However, this progress is built on trust grounded in the understanding that the purpose of good-faith security research is to improve security. If individuals intentionally and repeatedly cause harm by damaging computer systems and exfiltrating sensitive information, yet claim they are "good-faith security researchers," then this trust is undermined. Degraded trust risks exacerbating the chilling effect against security researchers. If there is a perception that good-faith security research encompasses harmful or malicious criminal activities, businesses will likely be less willing to voluntarily adopt vulnerability disclosure policies and less willing to work with security researchers disclosing vulnerabilities. Government entities may be less inclined to promote policies that protect security researchers. Ultimately this would make people less safe.

### B.     The Defendant's actions were not good-faith security research.

Good-faith security research is performed to improve security.[9] The Justice Department's CFAA charging policy cites a common definition:

---

[8] *See, e.g.*, U.S. Office of Mgmt. & Budget, OMB M-20-32, Improving Vulnerability Identification, Management, and Remediation (Sep. 2, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/09/M-20-32.pdf.

[9] *See* U.S. Cybersecurity and Infrastructure Security Agency, Binding Operational Directive 20-01: Develop and Publish a Vulnerability Disclosure Policy (Sep. 2,

"[G]ood faith security research" means accessing a computer solely for purposes of good-faith testing, investigation, and/or correction of a security flaw or vulnerability, where such activity is carried out in a manner designed to avoid any harm to individuals or the public, and where the information derived from the activity is used primarily to promote the security or safety of the class of devices, machines, or online services to which the accessed computer belongs, or those who use such devices, machines, or online services. Security research not conducted in good faith—for example, for the purpose of discovering security holes in devices, machines, or services in order to extort the owners of such devices, machines, or services—might be called "research," but is not in good faith.[10]

The line between good-faith security research and cybercrime can be murky, and context is important. Although cybersecurity is a dynamic field, there are longstanding basic norms around good-faith security research.[11] Questionable conduct may raise red flags, but it does not always indicate that a course of action was not intended to be good-faith security research. However, other conduct is clearly over the line and not consistent with norms of ethical hacking and good-faith security research. As explained below, the Defendant's conduct departed from several key features of good-faith security research.

---

2020), https://www.cisa.gov/news-events/directives/bod-20-01-develop-and-publish-vulnerability-disclosure-policy ("The security researcher's actions should be consistent with an attempt to improve security and to avoid doing harm, either by unwarranted invasions of privacy or causing damage to property.").

[10] U.S. Department of Justice, Justice Manual, 9-48.000.B.3 - Computer Fraud and Abuse Act (last updated May 2022), https://www.justice.gov/jm/jm-9-48000-computer-fraud.

[11] Trial Tr. vol. 6, 51-53, 60-61, Jun. 14, 2022. Trial Tr. vol. 7, 89-92, Jun. 15, 2022.

First, good-faith security researchers should avoid damaging or compromising the integrity of systems.[12] If researchers must cause damage, it should only be to the extent necessary to demonstrate a vulnerability.

In this case, the Defendant compromised the integrity of systems for multiple victim organizations by deleting logs and using system resources for cryptocurrency mining for profit.[13] These actions are inconsistent with good-faith security research.

Second, researchers following best practices avoid accessing sensitive data (such as personal information),[14] and they especially avoid exfiltrating data without

---

[12] *See* The Software Engineering Institute's Computer Emergency Readiness Team Coordination Center ("CERT/CC"), Vulnerability Disclosure Policy Templates for Reporters, https://github.com/CERTCC/vulnerability_disclosure_policy_templates/ blob/main/Reporters.md#coordination-with-organization (last accessed Sep. 15, 2023) ("Reporters MUST NOT exploit any vulnerability beyond the minimal amount of testing required to prove that the vulnerability exists or to identify an indicator related to that vulnerability. [...] Reporters SHOULD NOT establish command line access and/or persistence[.] Reporters MUST NOT exploit any vulnerabilities found to pivot to other systems.").

[13] Trial Tr. vol. 4, 89, 191-194, Jun. 10, 2022.

[14] *See* HackerOne, Code of Conduct, https://www.hackerone.com/policies/code-of-conduct (last accessed Sep. 15, 2023) ("Finders must not perform unsafe testing without prior authorization. This includes (but is not limited to): exploiting a vulnerability beyond what is necessary to show impact (i.e. accessing excessive amounts of customer internal information, dumping a database, etc.)."); *see also* CERT/CC, Vulnerability Disclosure Policy Templates for Reporters, *supra* n. 12 ("Reporters MUST NOT intentionally access the content of any communications, data, or information transiting or stored on ORGANIZATION's information system(s) – except to the extent that the information is directly related to a vulnerability and the access is necessary to prove that the vulnerability exists.").

permission.[15] Many research guidelines and vulnerability disclosure policies restrict access and exfiltration of sensitive information.[16] Because security research can cause computers to behave in unexpected ways, it is possible to access or exfiltrate data by accident, or to access or exfiltrate more data than the researcher intended. If researchers do access or exfiltrate information, it should only be the minimum needed to prove the vulnerability. If researchers obtain such data without authorization, they should stop and report the vulnerability.[17]

In this case, the Defendant exfiltrated massive quantities of data from multiple organizations to her server and then stored it on her personal storage devices.[18] This included the sensitive personal and financial information of more than 100 million people, source code, and security credentials for approximately 200 accounts.[19] Clearly the volume of data was much more than was needed to verify the validity of

---

[15] *See* CERT/CC, Vulnerability Disclosure Policy Templates for Reporters, *supra* n. 12 ("Reporters MUST NOT exfiltrate any data under any circumstances.").

[16] *See* Intigriti, Community Code of Conduct, https://kb.intigriti.com/en/articles/ 5247238-community-code-of-conduct (last accessed Sep. 15, 2023) ("Deliberate disruptive testing is also sanctionable. This includes [exfiltrating] sensitive data beyond what is needed for a Proof of Concept.").

[17] *See* Bugcrowd, Code of Conduct, https://www.bugcrowd.com/resources/ essentials/code-of-conduct (last accessed Sep. 15, 2023) ("If a vulnerability provides unintended access to data: Limit the amount of data you access to the minimum required for effectively demonstrating the impact of the vulnerability; and cease testing and submit a report immediately if you encounter any user data during testing, such as Personally Identifiable Information (PII), Personal Healthcare Information (PHI), credit card data, or proprietary information.").

[18] Trial Tr. vol. 4, 99, Jun. 10, 2022. Trial Tr. vol. 6, 79-80, Jun. 14, 2022.

[19] Trial Tr. vol. 5, 15, Jun. 13, 2022. Trial Exhibits 607, 609.

a vulnerability. Even if the Defendant did not know what data she obtained, or did not intend to exfiltrate that much data, this would have been revealed to the Defendant when she reviewed the exfiltrated information. Based on norms for good-faith security research, the typical next step would be to stop and report the vulnerability.[20] Yet the Defendant instead organized and again accessed the exfiltrated information and continued to exfiltrate data from other organizations, ultimately affecting dozens of businesses.[21] These actions are inconsistent with good-faith security research.

Third, once a vulnerability is discovered, good-faith security researchers generally should report the vulnerability in a timely manner, ideally through designated disclosure channels provided by the organization that owns or operates the system to which the vulnerability applies.[22] Many organizations have a

---

[20] *See, e.g.*, Organisation for Economic Co-operation and Development, Encouraging Vulnerability Treatment: Overview for Policy Makers (Feb. 11, 2021), https://www.oecd.org/digital/encouraging-vulnerability-treatment-0e2615ba-en.htm ("Researchers should be responsible for their own actions, including for the way in which they discover, report and disclose a vulnerability. They should not do more than what is necessary to demonstrate a vulnerability. They should: Report the vulnerability to the vulnerability owner first and as soon as possible after its discovery . . . .").

[21] *See, e.g.*, Trial Tr. vol. 4, 10-15, Jun. 10, 2022. Trial Tr. vol. 5, 10-15, Jun. 13, 2022. Trial Exhibits 605, 808, 810.

[22] *See, e.g.*, U.S. Cybersecurity and Infrastructure Security Agency, Binding Operational Directive 20-01: Develop and Publish a Vulnerability Disclosure Policy ("A hallmark of good faith activity is a factual, timely report of a vulnerability on a system authorized for testing, sent directly to the organization in accordance with a VDP's instructions[.]").

vulnerability disclosure policy, which is consistent with best practices for vulnerability management. A vulnerability disclosure policy provides a channel for receiving disclosures about vulnerabilities. Good-faith security researchers should use these channels to disclose vulnerabilities. If not, researchers can also use CERT/CC, disclose.io, bug bounty platforms, or other third parties to coordinate the disclosure of the vulnerability.

In this case, despite several victim organizations having a vulnerability disclosure policy, there is no evidence that the Defendant attempted to use this disclosure channel.[23]

We respectfully submit to the Court that these and other facts in the record clearly indicate that the Defendant's actions as described at trial were not good-faith security research.

### C. The Court should consider clarifying that Defendant's actions were not good-faith security research and that the District Court did not rely on any such claims in sentencing.

When presented with a case involving activity that is legitimately intended to be good-faith security research, the Center believes that enforcement and judicial bodies should consider the researcher's intent as a mitigating factor in favor of prosecutorial discretion, legal protections, and reduced consequences. In this case, there may be a public misperception that the District Court's sentencing was

---

[23] Trial Tr. vol. 2, 104-107, Jun. 8, 2022.

influenced by repeated claims that the Defendant's activities were good-faith security research during trial, including claims made to news media.[24]

By conflating harmful criminal activity with good-faith security research, this misperception risks eroding the collaborative progress achieved between security researchers, businesses, and government agencies in protecting good-faith security research.[25] Judicial and law enforcement processes to provide legal protections and reduced sentencing to good-faith security researchers risk losing credibility if malicious actors benefit from these protections by claiming that clearly harmful criminal activity is good-faith security research.

For this reason, it is important for the Court to clarify that Defendant's conviction and sentence are not based on the view that Defendant's conduct was good-faith security research. The security research community has long expressed legitimate concerns with unfair targeting by law enforcement and civil litigants, as well as disproportionate punishments for beneficial activity.[26] This concern is

---

[24] *See, e.g.*, Def.'s Mtn. to Dismiss CFAA Counts, 10-11 (Dkt. 123) (arguing that Defendant used "the *very same*" techniques as a "white hat hacker" and that her prosecution is arbitrary (emphasis in original)); Trial Tr. vol. 7, 63-65, 96-97, Jun. 15, 2022; *see also* Kate Conger, *Fraud and Identity Theft Trial to Test American Anti-Hacking Law*, The New York Times, (Jun. 8, 2022), https://www.nytimes.com/2022/06/08/technology/capital-one-hacker-trial.html.

[25] *See* Trial Tr. vol. 6, 54-56, Jun. 14, 2022.

[26] *See, e.g.*, James Hendler, *It's Time to Reform the Computer Fraud and Abuse Act, Scientific American* (Aug. 16, 2013), https://www.scientificamerican.com/article/its-times-reform-computer-fraud-abuse-act.

exacerbated by the availability of severe penalties under the CFAA and other anti-hacking laws.[27] If the Defendant's actions are perceived to be good-faith security research, yet the Defendant receives a substantial sentence following the Government's appeal, there is a risk that members of the security community will view the sentencing as the unjust result of governmental suppression of good-faith security research.

Accordingly, Center respectfully encourages the Court to clarify that the Defendant's actions were not good-faith security research and that the District Court did not rely on any such claims in sentencing. By acknowledging the distinction between good-faith security research and harmful criminal activity, the Court can foster continued trust among stakeholders and reaffirm that judicial processes recognize the value of ethical hacking.

## IV.   CONCLUSION

For the foregoing reasons, amicus respectfully asks the Court to clarify that the Defendant's conduct was not good-faith security research and that the Defendant's sentencing does not rely on claims that the Defendant's conduct was good-faith security research.

---

[27] *See, e.g.*, National Association of Criminal Defense Lawyers, Computer Fraud and Abuse Act, https://www.nacdl.org/Landing/ComputerFraudandAbuseAct (last accessed Sep. 15, 2023).

Dated this 18th day of September, 2023.

/s/ Tyler Welti

Tyler G. Welti, CA Bar # 257993

Matthew D. Field

Harley L. Geiger

**VENABLE LLP**

*Attorneys for Amicus Curiae the Center for*
*Cybersecurity Policy and Law*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | Appeal No. 22-30179

I am the attorney or self-represented party.

**This brief contains** | 3,088 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [        ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Tyler Welti | **Date** | Sep. 18, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*