IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) COA No. 22-30179 |
| Plaintiff-Appellee, | ) USDC No. CR19-159-RSL |
| v. | ) Western District of Washington |
| PAIGE A. THOMPSON, | ) (Seattle) |
| Defendant-Appellant. | ) |

**RESPONSE TO CENTER FOR CYBERSECURITY POLICY AND LAW'S MOTION TO BECOME AMICUS CURIAE**

Defendant-Appellant Paige A. Thompson, through her attorneys Vicki Lai and Ann K. Wagner, opposes the Center for Cybersecurity Policy and Law's Motion to Become Amicus Curiae in her sentencing appeal. The Center's proposed brief does not conform to the requirements of Federal Rule of Appellate Procedure 29 and would not aid the Court in deciding the only remaining issue in this case: whether Ms. Thompson's sentence was substantively reasonable. The motion should be denied.

I.  **Standard of Review and Relevant Rules**

Participation as an amicus to brief and argue as a friend of the court is a privilege within the sound discretion of the courts. *See Northern Sec. Co. v. United*

1

*States*, 191 U.S. 555 (1903). According to the Supreme Court, "the stated desires of *amici* are no substitute for a class action, are not evidence in the case, and do not influence our decision; we examine an *amicus curiae* brief solely for whatever aid it provides in analyzing the *legal* questions before us." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 n.16 (1984) (emphasis added). "In the absence of exceptional circumstances," the Ninth Circuit "do[es] not address issues raised only in an amicus brief." *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003).

Federal Rule of Appellate Procedure ("FRAP") 29(a)(4) requires that the purported amicus must list, on the cover of its brief, "the party or parties supported and indicate whether the brief supports affirmance or reversal."

FRAP 29(a)(3)(B) provides that the motion accompanying the brief must state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case."

**II.    Argument**

The Center for Cybersecurity Law and Policy's proposed brief fails to meet both formal and substantive requirements of FRAP 29(a), and recapitulates facts and arguments already covered by the government's opening brief. Because the brief would not aid the Court in deciding any legal issue relevant to this appeal, the Court should deny the motion to become amicus and for leave to file the brief.

2

### A. The Proposed Amicus Brief Fails to Conform to FRAP 29(a), Presumably Because It Takes No Position on the Only Relevant Issue in the Case.

Although FRAP 29(a)(4) requires that an amicus list *on the cover of the brief* the party it supports and whether it supports affirmance or reversal, the Center for Cybersecurity Law and Policy's proposed brief does neither. Proposed Amicus Br. at i. This defect is telling: The Center purports to take no position on the only issue remaining in this case: whether Ms. Thompson's sentence is substantively reasonable. *See* Gov't Opening Br. at 3; Proposed Amicus Br. at 1 ("It is not the Center's purpose to specify an appropriate sentence."). It is hard to understand how the Center can assist the position of the government, *see id.* at 1, when it refuses to argue that Ms. Thompson's time-served sentence and five years of probation should be vacated or take any position with respect to the interpretation or importance of any § 3553(a) factor.

FRAP 29(a)(3)(B) requires the Center to state why the matters asserted are relevant to the case. *See* Mot. at 2–3. But the Center does not tie its stated interest in distinguishing good-faith and bad-faith security research to the length of Ms. Thompson's sentence (the only issue presented by this sentencing appeal) or to any statement at the sentencing proceeding below, but to an amorphous "public perception" it wishes to combat through the vehicle of a federal criminal case. *Id.* at 1. The Court has no obligation to assist the Center in its public-relations

3

campaign on behalf of companies that incur cybersecurity risk.[1] Such a campaign has no relevance to the sentencing arguments here, particularly in light of Ms. Thompson's decision to withdraw her appeal of the convictions. *See* Dkt. 16–18; *cf.* Proposed Amicus Br. at 2 n.1, 12 n.24 (citing the Defendant's pretrial motion to dismiss and a defense expert at trial but not the sentencing transcript).

The only legal authority the Center cites for its motion, *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), takes care to point out that in that case, "[t]here [was] no indication. . . that. . . the [parties] were mere strawmen to confer standing so that amicus could litigate its views." *Id.* at 1260. Here, there is such an indication, because Ms. Thompson is not contesting the jury's convictions, yet a purported amicus wants to revive her trial arguments in order to manufacture a judicial forum for its views. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (warning against departures from the principles of party presentation in a criminal

---

[1] The Center lists Amazon and Capital One as "current or former" members, Proposed Amicus Br. at 2, but neither the Center's website nor its 2001 Form 990 filing contains a list of its members. *See* https://www.centerforcybersecuritypolicy.org/about. The Center was originally formed "as a 501(c)(6) nonprofit within Venable LLP's Cybersecurity Services group," *id.*, and its most recent Form 990 shows that most of the Center's $2.3 million gross receipts are paid to Venable LLC, in the form of management fees. *See* Tax Forms, https://www.guidestar.org/profile/82-4117300.

case). The Center is trying to influence public opinion, not the outcome of this sentencing appeal.

### B. The Proposed Brief Would Not Aid the Court in Its Analysis.

Appointment of an amicus curiae is most appropriate where the proposed amicus can "assist[ ] in a case of general public interest, supplement[ ] the efforts of counsel, and draw[ ] the court's attention to *law* that escaped consideration." *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982) (emphasis added). Courts frequently decline to consider briefs that repeat points already made by the parties. *See, e.g.*, *In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) ("Because the [proposed amicus] brief does not meet the requirements of Rule 29, and we do not find that it adds anything consequential to our consideration of this case, Halo's motion to strike is granted."). Here, the Center's proposed brief repeats government arguments that are not contested on appeal and voices a purported concern about public perception—not law—that has no grounding in the sentencing transcript, much less common sense.

#### 1. The brief highlights facts and arguments already covered by the government.

The Center proclaims a concern with distinguishing good-faith researchers from bad-faith ones and identifies Ms. Thompson with the bad-faith category. Proposed Amicus Br. at 1. This suggestion is not novel, since Ms. Thompson's

5

jury rejected her expert's arguments about her actions in relation to the CFAA and convicted her of several CFAA counts in addition to wire fraud. Indeed, the Center's brief echoes the abundant negative characterizations of Ms. Thompson in the government's statement of the case, *see* Opening Br. at 4–21, and recycles the government's quotation of a trial expert regarding "the difference between good-faith security research and malicious hacking," Opening Br. at 20. For example, the Center emphasizes that "good-faith security researchers should avoid damaging or compromising the integrity of systems," Proposed Amicus Br. at 8, even though the government already quoted its expert's explanation "that one of the generally accepted standards of conduct for good-faith security researchers is 'do no damage,'" and "that downloading data, deleting computer logs, changing security configurations, uploading malware, and cryptojacking all 'cross[] a line into malicious hacking.'" Opening Br. at 20.

    The government returns to identical themes in its argument, quoting the same trial expert. Opening Br. at 45. It goes so far as to criticize defense attorneys for arguing "that Thompson's crimes were not malicious," and faults the district judge for suggesting that such an argument was "fair." *Id*. It devotes an entire section to arguing that "[t]he district court ignored evidence of Thompson's bad motives." Opening Br. at 51–56.

The Center's brief adds nothing to the government's distillation of the differences between good-faith and bad-faith security research, most notably through quotations of a trial expert who emphasized precisely those themes.

> **2. To the extent the brief adds anything new, its suggestion is neither grounded in the trial record not consistent with common sense.**

The only arguably new concept the Center contributes is the idea that Ms. Thompson's sentence somehow suggests the judge thought Ms. Thompson belonged to the good-faith researcher category. *See* Proposed Amicus Br. at 1 ("The Center files this brief in support of the Plaintiff-Appellant's [sic] to inform the Court of the risks of conflating harmful criminal activity with good-faith security research and address how the sentence issued by the District Court risks conflating these concepts in public perception."). This suggestion is nonsensical. Given the district court imposed three years of home confinement and an extended term of probation, and ordered Ms. Thompson to pay restitution of nearly $41 million, it is improbable that the court conflated "harmful criminal activity with good-faith security research." *See* ER 3, 5–6, Restitution Order (D. Ct. Dkt. 400). Nor does the Center explain why such a sentence would give rise to the idea that the person receiving it must have acted in good faith.

Moreover, the judge's explanation of the sentence gave no indication that he believed Ms. Thompson was a good-faith researcher (as opposed to thinking she

7

deserved a zealous defense on debatable legal issues under the CFAA), and it is notable that the Center fails to cite a single portion of the sentencing transcript to anchor its feared "public perception" of the basis of the sentence. The judge stated his actual reasons in the record, citing several § 3553(a) factors, which the Center does not address.

### III. Conclusion

Because the Center's proposed amicus brief does not conform to FRAP 29 and, more importantly, does not aid the Court in deciding any legal issue presented by this sentencing appeal, the Court should deny the Center for Cybersecurity Law and Policy's motion to appear as amicus curiae and should deny leave to file its brief.

DATED this 22nd day of September 2023.

Respectfully submitted,

s/ *Vicki W.W. Lai*
Chief Appellate Attorney

s/ *Ann K. Wagner*
Assistant Federal Public Defender

Attorneys for Paige A. Thompson