No. 22-30179
Before: The Honorable Johnnie B. Rawlinson, Danielle J. Forrest, Jennifer Sung
Decided on March 17, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

PAIGE A. THOMPSON,

Defendant-Appellee.

On Appeal from United States District Court
Western District of Washington at Seattle
District Court Case No. 2:19-cr-00159-RSL
The Honorable Robert S. Lasnik
United States District Judge

**DEFENDANT-APPELLEE'S PETITION FOR PANEL REHEARING OR
PETITION FOR REHEARING EN BANC**

Vicki Lai
Ann Wagner
Attorneys for Paige Thompson
Federal Public Defender's Office
1601 5th Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100
vicki_lai@fd.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................. 1

REASONS FOR PANEL REHEARING OR REHEARING EN BANC ................. 4

    I.    The panel majority's decision conflicts with Supreme Court and Ninth Circuit precedent instructing the lower courts that all sentences, including those "significantly outside the Guidelines range" must be reviewed under a deferential abuse-of-discretion standard ...................... 4

        A.    The Court faulted the district court for a percentage deviation from a Guideline range no one thought was appropriate, directly defying the Supreme Court's ruling in *Gall*. .................................................. 4

        B.    The panel majority's deep skepticism and intense scrutiny of the district court's reasoning is indistinguishable from the de novo review rejected by the Supreme Court and omits a dispositive step in the "clearly erroneous" test from *United States v. Hinkson*. ........ 7

    II.    The panel majority's opinion flouts party presentation principles recently emphasized by the Supreme Court. ........................................................ 11

        A.    The panel majority failed to defer to the government's waiver of any procedural reasonableness claim, confusing two claims analyzed under different forfeiture standards. ............................... 12

        B.    The panel majority faulted the district court for placing excess weight on the treatment of trans women in prison, despite all parties agreeing it was a relevant consideration worthy of briefing and extensive discussion. ..................................................................... 14

        C.    The panel majority disregarded party presentation principles by faulting the district court for not considering sentencing disparity data that was only submitted on appeal. ......................................... 16

CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING ........ 18

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Gall v. United States*, 552 U.S. 38 (2007) ................................. 4, 5, 7, 8, 12, 14, 17

*Koon v. United States*, 518 U.S. 81 (1996) ............................................................. 15

*Rita v. United States*, 551 U.S. 338 (2007) ............................................................ 13

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ............................................ 13

*United States v. Christensen*, 732 F.3d 1094 (9th Cir. 2013) ................................. 7

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) ................................... 9, 11

*United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) .................................... 3, 10

*United States v. Samuels*, 808 F.2d 1298 (8th Cir. 1987) ...................................... 11

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ...................................... 4, 11

*United States v. Sylvester Norman Knows His Gun, III*, 438 F.3d 913 (9th Cir. 2006) ......................................................................................................... 13, 14

*United States v. Thompson*, 130 F.4th 1158 (9th Cir. 2025) ............................................................................. 3, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) ........................................ 9

*United States v. Valencia–Barragan*, 608 F.3d 1103 (9th Cir. 2010) ................... 13

*United States v. Yellow Cab Co*, 338 U.S. 338 (1949) .......................................... 11

**Statutes**

18 U.S.C. § 3553 ................................................................................................. 3, 6

**INTRODUCTION**

The Honorable Robert Lasnik, who presided over this computer fraud and abuse and wire fraud case for over three years, is an experienced and highly respected jurist who has presided over 1,900 federal criminal cases in his 27 years on the federal bench.[1] At the 2022 sentencing, all parties agreed a non-Guidelines sentence for Paige Thompson—a physically fragile transgender woman with a long history of serious mental health issues and a recent autism diagnosis—was appropriate.

Even the government thought a large variance from the Guidelines was justified, recommending an 84-month prison sentence, less than half the low end of the advisory Guideline range of 168 to 210 months' imprisonment. In its sentencing memorandum, the government affirmatively argued for a non-Guideline sentence, stating a Guideline sentence was meant for those "with purely malicious motives who committed maximum harm." CR 377 at 4.[2] The government explained that "[a] significant downward variance [was] appropriate to recognize

---

[1] Thomson Reuters, *Litigation Analytics—Hon. Robert S. Lasnik—Experience*, Westlaw, https://1.next.westlaw.com/Analytics/Profiler?findType=h&pubNum= 176284&cite=0170104401&originatingDoc=I261ca830d5b211ecbba4d707ee4952 c4&refType=RQ&originationContext=document&transitionType=DocumentItem &ppcid=4d4cd66dd7b240e8a6e405a367ce6911&contextData=%28sc.Search%29 &analyticGuid=I261ca830d5b211ecbba4d707ee4952c4&docGUID=I20059DDA1 DD211B2B6ECA400520A6CE5&contentType=judge#/judge/I20059DDA1DD21 1B2B6ECA400520A6CE5/caseHistoryReport (last updated June 13, 2025).
[2] CR refers to docket entries filed in the district court.

1

that Thompson could have caused even more harm than she did, that her decision-making was influenced by her mental health circumstances, trauma, and lack of a robust support system, and that there are widely recognized medical, mental, and physical risks she will face in prison as a transgender woman." *Id*. The U.S. Probation and Pretrial Services (Probation) also concluded a Guidelines sentence was inappropriate, recommending a 24-month custodial sentence followed by three years of supervised release. PSR-31. Pointing to "extenuating circumstances in this case," Probation offered the court an alternative non-custodial option: "time served and 5 years of probation, to include 36 months of home incarceration." PSR-37. The defense recommended a time-served sentence without an additional probation term. 2-ER-83.

Before sentencing Ms. Thompson, the district judge emphasized that sentencing judges "are given a great deal of discretion to do justice in individual cases" and "the question of what is justice here is a really, really hard question." 1-ER-58. Viewing the entire narrative of the case including the parties' pre-sentencing arguments, Probation's alternative recommendations, and having presided over multiple pretrial hearings, including two heavily contested detention hearings, *see* CR[3] 59, 67, and the eight-day jury trial, Judge Lasnik decided Probation's alternative recommendation was sufficient, but not greater than

---

[3] "CR" refers to docket entries filed in the district court.

necessary to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).
In addition to a five-year probationary sentence, the court imposed 36 months of
home confinement, requiring that Ms. Thompson be "restricted to her residence at
all times except for employment, religious services, medical or legal reasons, or as
otherwise approved by the location monitoring specialist." 1-ER-5. The district
judge also imposed 26 special conditions, including extensive computer
monitoring and financial disclosure requirements, quarterly polygraph testing, and
mandatory participation in a mental health program approved by Probation. 1-ER-
5. In a later proceeding, Ms. Thompson was further ordered to pay over $40
million in restitution to Capitol One. CR 400.

A divided panel reversed the sentence as substantively unreasonable, stating
the court's probationary sentence "leaves us with 'a definite and firm conviction
that [it] committed a clear error of judgment in the conclusion it reached.'" *United
States v. Thompson*, 130 F.4th 1158, 1170 (9th Cir. 2025) (quoting *United States v.
Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc)). The panel majority held
Judge Lasnik's "findings minimizing the nature, circumstances, and seriousness of
Thompson's offenses" were "clearly erroneous" and that the court "committed a
clear error of judgment in its weighing of several of the § 3553(a) factors, which
resulted in a substantively unreasonable sentence." *Thompson*, 130 F.4th at 1165.
Rehearing by the panel or by the en banc Court is warranted because the panel

3

majority reviewed the district judge's sentencing decisions under a standard akin to de novo review, directly conflicting with controlling Supreme Court and Ninth Circuit law requiring that the Court give the district court's sentencing decision and its findings of fact due deference under an abuse-of-discretion standard.

Furthermore, the majority opinion violates the principles of party presentation in multiple ways, conflicting with the Supreme Court's guidance in its unanimous decision reversing this Court in *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

### REASONS FOR PANEL REHEARING OR REHEARING EN BANC

I.  **The panel majority's decision conflicts with Supreme Court and Ninth Circuit precedent instructing the lower courts that all sentences, including those "significantly outside the Guidelines range" must be reviewed under a deferential abuse-of-discretion standard.**

   A.  **The Court faulted the district court for a percentage deviation from a Guideline range no one thought was appropriate, directly defying the Supreme Court's ruling in *Gall*.**

Because the government disclaimed any procedural error, the Court was asked to decide only whether the district judge's sentence was substantively unreasonable under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 49–51 (2007). Disregarding the institutional superiority that the district judge possessed in this case, the panel majority conducted its own de novo review of the record, applying a framework resoundingly rejected by the Supreme Court in *Gall*.

The majority began its analysis by stating that the district court "granted a roughly 98% downward variance," *Thompson*, 130 F.4th at 1161, in direct defiance of the Supreme Court's guidance in *Gall*. *See Gall*, 552 U.S. at 47 ("reject[ing] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence"). A percentage-variance calculation based on the 100 days Ms. Thompson served in pretrial custody (1 - 3.3 months/168 months = .98) explicitly ignores the five years of probation (with three years of home confinement) that constituted the most significant portion of the sentence.[4] Again, the Supreme Court specifically cautioned against using such a calculation to review such a probation-heavy sentence in *Gall*:

> [D]eviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years. Moreover, quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation.

*Gall*, 552 U.S. at 47–48. As Judge Sung makes clear in dissent, the majority's opinion irreconcilably conflicts with *Gall* by "directly flout[ing] the Supreme Court's instruction that courts should not quantify variances from the Guidelines as

---

[4] Ms. Thompson has nearly completed the home-confinement portion of her sentence. 1-ER-2–7.

5

a certain percentage of the maximum, minimum, or median prison sentence recommended by the [g]uidelines." *Thompson*, 130 F.4th at 1171 (Sung, J., dissenting) (internal quotation marks omitted). Panel or en banc rehearing is warranted for this clear conflict with the Supreme Court mandate alone.

Compounding its error in looking for justifications for a percentage deviation, the panel majority's discussion of the degree of variance ignores that no one—not even the government—thought a 168- to 210-month Guidelines sentence was an appropriate sentence for Ms. Thompson. The government advocated for a "significant" downward variance. 2-ER-117. Specifically, it asked for an 84-month sentence ("less than half of the low end of the standard range," 2-ER-117), and justified this large variance by acknowledging that Ms. Thompson's case fell outside the mine-run of cases because she was not "a person with purely malicious motives who committed maximum harm." 2-ER-117. The question before the district court was not whether it should vary downward, but by what significant degree.

All parties similarly acknowledged other reasons for a downward variance, including reasons going to the "nature and circumstances of the offense" and explaining sentencing disparities. 18 U.S.C. § 3553(a)(1); (6). Probation characterized Ms. Thompson's post-breach conduct as falling "somewhere in the middle of innocent and malicious[,]" pointing out she "did not profit off this

download" and that "[u]nlike most 'hacking' or device fraud cases in this district, Ms. Thompson did not sell the data, she did not use the data, and she did not make the data publicly available to anyone else. Ms. Thompson made no money off this breach, nor did she attempt to." PSR-35. The government argued her offenses were mitigated by "her mental health circumstances, trauma, and her lack of a robust support system[,]" and, as a transgender woman, she faced "widely recognized" dangers in prison. 2-ER-117.

> **B.** **The panel majority's deep skepticism and intense scrutiny of the district court's reasoning is indistinguishable from the de novo review rejected by the Supreme Court and omits a dispositive step in the "clearly erroneous" test from *United States v. Hinkson*.**

The panel majority's skeptical, factor-by-factor analysis of the district court's oral explanation bears little resemblance to the deferential abuse-of-discretion standard mandated by the Supreme Court. *See Gall*, 552 U.S. at 56 ("Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled de novo review of the facts presented and determined that, in its view, the degree of variance was not warranted."); *see also United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013) (holding that the sentencing court is "free to conclude that the applicable Guidelines range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy."). The *Gall* Court's observations about the Eighth Circuit second-guessing the district

court's understanding of the "seriousness of the offense" and sentencing disparities apply with equal force here. *See, e.g.*, *Gall*, 552 U.S. at 53 (holding that the district court "plainly did consider the seriousness of the offense" when it stated, "The Court, however, is bound to impose a sentence that reflects the seriousness of joining a conspiracy to distribute MDMA or Ecstasy"); *compare* 1-ER-59 (Judge Lasnik stating, "I find it was a terrible crime"); *Gall*, 552 U.S. at 54 ("As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."); *cf. Thompson*, 130 F.4th at 1168 ("Here, the district court acknowledged that the Guidelines help avoid sentencing disparities. But beyond that general recognition, nothing in the record indicates that in choosing the sentence that it imposed, the district court weighed the risk of unwarranted disparity in making its decisions.").

The panel majority's failure to follow the proper standard of review is particularly glaring in its analysis of the district judge's purported fact finding. The panel majority concluded that "[o]n this record, the district court's findings minimizing the nature, circumstances, and seriousness of Thompson's offenses are clearly erroneous," *Thompson*, 130 F.4th at 1165, and that it was "clear error for

the district court to conclude that Thompson's actions were not 'malicious.'" *Id.* at 1165–66. That conclusion is inconsistent with the *government*'s own mitigation observations (distinguishing Ms. Thompson from "a person with purely malicious motives," 1-ER-117) and conflicts with Supreme Court and Ninth Circuit law on clearly erroneous fact finding under an abuse-of-discretion standard.

Nowhere in the majority's clear-error analysis does the majority apply or even cite to *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc). In *Hinkson*, this Court considered the application of the "abuse of discretion" standard to a district court's findings of fact. Reconciling two lines of cases, the Court adopted an objective two-part test to determine when an appellate court may reach a "definite and firm conviction" that a mistake has been committed in the district court's fact finding. *Id.* at 1260–61 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Under this test, the Court must first "consider whether the district court identified the correct legal standard for decision of the issue before it. Second, the test then requires us to determine whether the district court's findings of fact and its application of those findings of fact to the correct legal standard, were illogical, implausible, or *without support in inferences that may be drawn from facts in the record*." *Id.* at 1251 (emphasis added); *see Thompson*, 130 F.4th at 1158 (Sung, J., dissenting).

9

Here, the panel majority concluded it had "a 'definite and firm conviction that [the district court] committed a clear error of judgment" without first considering whether *Hinkson*'s two-part test was met—particularly, whether the district court's findings of fact were illogical or without support in permissible inferences in the record. *Thompson*, 130 F.4th at 1170.[5] They were not, as Judge Sung's dissent plainly demonstrates.

The panel majority found it was "clear error for the district court to conclude that Thompson's actions were not 'malicious,'" *id*. at 1165–66, while Judge Sung countered in dissent that "[a]s a factual matter, the district court did not make this finding. Rather, the court found that Thompson had not acted 'in the malicious manner that you want to punish, to the same degree as somebody who gets that information and immediately turns to monetizing it in some way.'" *Id*. at 1172 (Sung, J., dissenting). This dispute demonstrates that there are at least two plausible interpretations of the district court's comments on malice, and only Judge Sung's deferential reading considers the fact that *the government* affirmatively distinguished Ms. Thompson from someone "with purely malicious motives who

---

[5] The panel majority cites to *Ressam* in support of its "definite and firm conviction" determination. *Thompson*, 130 F.4th at 1170. But the *Ressam* Court, unlike here, specifically stated that the "requirement for 'a definite and firm conviction that the district court committed a clear error of judgment' is consistent with the general description of the abuse of discretion standard we recently articulated in *Hinkson*[.]" 679 F.3d at 1087.

10

committed maximum harm." 2-ER-117. *See* 130 F.4th at 1172 (Sung, J.,

dissenting) ("This finding was not clear error. To the contrary, it is fully consistent

with the Government's sentencing memorandum, which conceded that Thompson,

unlike a person with 'purely malicious motives,' should receive a '[a] significant

downward departure . . . to recognize that [she] could have caused even more harm

than she did.'"). This conflict between the panel majority and dissent plainly shows

there are two permissible and plausible views of the same record. That Judge

Lasnik made "a choice between two permissible views of the weight of evidence is

not clearly erroneous" as a matter of Supreme Court law, *United States v. Yellow

Cab Co*, 338 U.S. 338, 342 (1949), and the contrary conclusion in the panel

majority merits en banc review. *See also Hinkson*, 585 F.3d at 1260 (approving of

this holding in *Yellow Cab Co.*, 338 U.S. at 342).

## II. The panel majority's opinion flouts party presentation principles recently emphasized by the Supreme Court.

The panel majority's opinion flouts party presentation principles in multiple

ways, inviting another rebuke from the Supreme Court as in *Sineneng-Smith*. *See

Sineneng-Smith*, 590 U.S. at 376 (quoting *United States v. Samuels*, 808 F.2d 1298,

1301 (8th Cir. 1987)) (Courts "do not, or should not, sally forth each day looking

for wrongs to right. [They] wait for cases to come to [them], and when [cases arise,

courts] normally decide only questions presented by the parties."). First, instead of

deferring to the government's explicit waiver of any procedural claim, the panel

11

majority faulted the district court for arguable procedural errors in the guise of addressing substantive reasonableness. Second, the panel faulted the district court for placing undue emphasis on the defendant's status as a trans woman, even though the government, Probation, and the defense had all discussed the matter in depth and the court would have erred by failing to address the factor. Finally, the panel majority faulted the district court for failing to discuss data regarding sentencing disparities, even though the government did not submit any comparison data to the district court and the fact of sentencing disparity is part and parcel of any significant deviation from a Guidelines sentence, as the district court acknowledged.

> **A. The panel majority failed to defer to the government's waiver of any procedural reasonableness claim, confusing two claims analyzed under different forfeiture standards.**

The government affirmatively waived any procedural claim, Opening Br. at 48, yet the panel majority faults the district court for its insufficient sentencing explanation and for reliance on purported clear errors of fact in formulating the sentence—both classic procedural errors. *Gall* makes clear that the following are procedural errors:

> failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 51.

The majority opinion relies on several instances in which the district court clearly listened to and indicated understanding of the government's argument about a factor but gave a relatively paltry explanation of how it viewed the factor. *See, e.g., Thompson*, 130 F.4th at 1167 (emphasis added) ("But, while the district court acknowledged the Government's argument that a low sentence would incentivize similar crimes, *it does not appear* that it gave this factor meaningful weight in selecting the sentence that it imposed. This was a clear error of judgment."); *cf. Rita v. United States*, 551 U.S. 338, 358 (2007) (evaluating a sentencing explanation claim: "The record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of defendant's various physical ailments and imposed a sentence that takes them into account."). A failure to adequately respond to a nonfrivolous reason for a different sentence is a procedural error, and the government waived any such claim. *See United States v. Carty*, 520 F.3d 984, 995 (9th Cir. 2008). Notably, such a procedural error is reviewed for plain error when not specifically objected to below, unlike the substantive reasonableness claim the government elected to pursue. *United States v. Valencia–Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010); *United States v. Sylvester Norman Knows His Gun*, *III*, 438 F.3d 913, 918 (9th Cir. 2006) (applying plain error review where the defendant "did not object on the ground that the district court did not sufficiently address and

13

apply the factors listed in § 3553(a)"). The government should not be permitted to disclaim any procedural claim and then proceed to win a more serious substantive reasonableness claim on the identical "ground that the district court did not sufficiently address and apply the factors listed in § 3553(a)." *Id.*

Furthermore, the majority opinion hinges its substantive reasonableness reasoning in large part on "selecting a sentence based on clearly erroneous facts," *Gall*, 552 U.S. at 51, including about Ms. Thompson's malice. *See Thompson*, 130 F.4th at 1165 ("[I]t was clear error for the district court to conclude that Thompson's actions were not 'malicious.'"); *id.* at 1666 ("[T]he district court's finding that Thompson did not do anything 'bad' before she was caught is clearly erroneous."); *see also id.* at 1173 (Sung, J., dissenting) ("The district court never found that Thompson's actions were not malicious, never found that she did not do anything bad, and permissibly found that she was tortured and tormented by her actions."). Selecting a sentence based on clearly erroneous facts is a procedural error subject to forfeiture, *Gall*, 552 U.S. at 51, but no one will bring such a claim if unwaivable substantive reasonableness is an equally viable vehicle.

### B.  The panel majority faulted the district court for placing excess weight on the treatment of trans women in prison, despite all parties agreeing it was a relevant consideration worthy of briefing and extensive discussion.

The panel majority faults the district court for paying excess attention to the defendant's transgender status—even though at a prior detention hearing, both the

government and defense sentencing memoranda and oral presentations, amicus parties, and Probation's presentence report all devoted substantial space to a subject that was simultaneously attracting a great deal of contemporary litigation and political debate. *See Thompson*, 130 F.4th at 1166 ("The district court considered that Thompson is transgender, autistic, and has suffered prior trauma in her life. Thompson's personal background and characteristics . . . may not be the sole basis for the chosen sentence."). As Judge Sung points out, "A district court's finding that a defendant is 'particularly likely to be [a target] of abuse during their incarceration' is 'just the sort of determination that must be accorded deference by the appellate courts.'" *Id.* at 1173 (Sung, J., dissenting) (citing *Koon v. United States*, 518 U.S. 81, 111 (1996)).

Further, as Judge Sung explains, the panel majority further displayed a lack of deference and even hostility toward the trial court's explanation of this sentencing consideration when it discussed a potential change in policy relating to trans women in federal prisons. The district court acknowledged the parties' arguments regarding potential changes in prison policy regarding trans inmates, "[b]ut far from carry[ing] significant weight at sentencing, as the majority claims, the district court ultimately concluded that '[w]e just don't know' what would happen in the future, and emphasized that 'dealing with Paige Thompson, what she

15

did, who she is, is the dilemma before the court today.'" *Thompson*, 130 F.4th at

1173 (Sung, J., dissenting).

**C.** **The panel majority disregarded party presentation principles by faulting the district court for not considering sentencing disparity data that was only submitted on appeal.**

The prosecution declined to submit any sentencing disparity data below,

perhaps because it was obvious that a significantly below-Guideline sentence (as

the government itself was advocating) would inherently create sentencing

disparities with more mine-run cases. The panel majority nonetheless places

weight on evidence submitted only on appeal: "[T]he Government has presented

compelling data showing that the sentence imposed in this case is a notable

outlier." *Thompson*, 140 F.4th at 1168. This is a blatant departure from party

presentation principles, refusing to credit the government's own disinterest before

the district court in dwelling on ordinary sentencing disparity in a case where all

parties agreed that Ms. Thompson's case was highly unusual. As Probation told the

district court, "[u]nlike most 'hacking' or device fraud cases in this district,

Ms. Thompson did not sell the data, she did not use the data, and she did not make

the data publicly available to anyone else. Ms. Thompson made no money off this

breach, nor did she attempt to." PSR-35; *compare Gall*, 552 U.S. at 55 ("From

these facts, it is perfectly clear that the District Judge considered the need to avoid

unwarranted disparities, but also considered the need to avoid unwarranted similarities among other [defendants] who were not similarly situated.").

Panel or en banc rehearing is necessary because the panel majority opinion directly conflicts with Supreme Court and Ninth Circuit precedent requiring this Court to review the substantive reasonableness of even a sentence far outside the Guidelines range under a deferential abuse-of-discretion standard; failed to apply controlling Supreme Court and Ninth Circuit law in deciding the district judge's fact finding was clearly erroneous; and violates the Supreme Court's recent instruction regarding party presentation principles.

Dated this 30th day of June 2025.

s/ *Vicki Lai*
Chief Appellate Attorney
s/*Ann Wagner*
Assistant Federal Public Defender
Attorneys for Paige Thompson

**CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING**

We are the attorneys of record in this case. We certify that, pursuant to

Circuit Rules 35-4 and 40-1, the attached petition for panel rehearing or petition

for rehearing en banc is prepared in a format, typeface, and type style that complies

with Federal Rule of Appellate Procedure 32(a)(4)–(6) and contains 3,883 words.

Dated this 30th day of June 2025.

s/ *Vicki Lai*
Chief Appellate Attorney
s/*Ann Wagner*
Assistant Federal Public Defender
Attorneys for Paige Thompson